UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAY G. KIMPEL,

                Plaintiff,

    v.

KING COUNTY JAIL, *et al.*,

                Defendants.

Case No. C15-1500-TSZ-JPD

REPORT AND RECOMMENDATION

### INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Jay Kimpel is currently in custody at the Monroe Correctional Complex-Special Offender Unit. His civil rights claims arise out of a previous period of incarceration at the King County Jail. Plaintiff alleges in his complaint that defendants failed to provide adequate care for his mental health needs. Though not entirely clear from the complaint, plaintiff appears to identify the King County Jail, Public Health Seattle, and King County as defendants in this action. Defendants now move for summary judgment. Plaintiff has filed a response in opposition to defendants' motion, and defendants have filed a reply brief in support of their motion. The Court, having considered defendants' motion, all briefing of the parties, and the balance of the record, concludes that

REPORT AND RECOMMENDATION - 1

defendants' motion for summary judgment should be granted as to the three named defendants, but that plaintiff should be given an opportunity to file an amended complaint identifying viable defendants should he desire to do so.

## FACTS

Plaintiff filed the instant action in September 2015 while he was confined in the King County Correctional Facility ("KCCF") in Seattle. (*See* Dkt. 1.) He asserts in his complaint that he was booked into KCCF on May 7, 2015, and that after a week in custody he started feeling "very depressed." (Dkt. 4 at 3.) Plaintiff contends that he submitted multiple medical requests advising the jail of his worsening depression, but the jail would not reply. (*Id*.) He claims that after 60 days of "begging" for someone from mental health to see him, he attempted to hang himself on a pull-up bar outside his cell. (*Id*.) This attempted strangulation occurred on June 24, 2015. (*See id*.) Plaintiff was thereafter kept in psychiatric housing for about eight days before he was put back in general population in the cell with the pull-up bar in front. (*Id*.)

Plaintiff asserts that he thereafter sent multiple kites asking to see someone from mental health, but it took four weeks before he was seen. (*Id*.) According to plaintiff, he was at that time prescribed "Ramron," but the medication was stopped after two weeks. (*Id*.) Plaintiff maintains that he then sent multiple kites again and finally "went off the deep end" and swallowed four razor blades. (*Id*.) Plaintiff was sent to the hospital and, after returning to KCCF, he claims he spent only one night in psychiatric housing before being moved back to the same cell with the pull-up bar in front. (*Id*.) Plaintiff asserts that he is in pain, that he can't get any help from medical, and that "it just bugs me to the point to where I want to die and just get it over with[.]" (*Id*.) As noted above, plaintiff is no longer confined at KCCF.

REPORT AND RECOMMENDATION - 2

Defendants submitted in support of their summary judgment motion the declaration of Michael Stanfill, Ph.D., the Psychiatric Services Director of Jail Health Services (JHS) which is a division of Public Health - Seattle & King County.  (Dkt. 57.)  It does not appear that Dr. Stanfill was ever directly involved in plaintiff's care.  It appears instead that Dr. Stanfill merely reviewed plaintiff's electronic medical record and set forth in his declaration relevant information gleaned from that review.  (*See id*. at 2.)  A summary of that information follows.

At the time of his booking into KCCF on May 7, 2015, plaintiff was screened by JHS, as are all incoming inmates, to identify any physical and mental health issues which may require the attention of JHS staff.  (*See id*.)  During that assessment, plaintiff stated that he was not currently suicidal and that he'd had no suicidal ideations in the previous 12 months.  (*Id*.)  He did, however, report a suicide attempt one and a half years prior.  (*Id*.)  The health screening report completed by JHS staff contains a note from psychiatry indicating that plaintiff had been prescribed antidepressants during a previous booking in January 2015, but that the antidepressants were discontinued in February 2015 because plaintiff consistently refused to take the medication.  (*Id*. at 2-3.)  Plaintiff did not request psychiatric medication or intervention at the time of his May 2015 booking.  (*Id*. at 3.)

On June 15, 2015 and June 17, 2015, plaintiff submitted medical kites indicating that he was depressed and needed the antidepressants he had been taking while out of custody, Remeron and Buspar.  (*See id*.  *See also*, Dkt. 4 at 9-10.)  These kites were both addressed by the nursing staff on June 17, 2015, and the JHS nursing triage notes indicate that plaintiff reported being "very depressed," but that he did not present with overt symptoms of depression and he denied any suicidal ideation at that time.  (*See id*.)  Plaintiff was scheduled to be seen by a provider, but

REPORT AND RECOMMENDATION - 3

the appointment wasn't expedited because there was no sense of urgency in plaintiff's request and he did not present with significant signs of impairment. (Dkt. 57 at 3.)

Plaintiff attempted strangulation on June 24, 2015 by tying a sheet to a pull-up bar in his housing area. (Dkt. 57 at 3.) Plaintiff hung for approximately 15 seconds before the sheet gave way and he fell to the floor. (*Id*.) When JHS staff arrived, plaintiff was sitting on his bunk and he told staff that he was alright. (*Id*.) There was no evidence of gross injury and plaintiff was transferred to suicide watch in psychiatric housing at KCCF. (*Id*.) However, during transport to psychiatric housing, corrections staff noticed a red mark on plaintiff's neck and he was therefore sent to Harborview Medical Center (HMC) for evaluation. (*Id*.) Plaintiff was examined at HMC and received CT scans of both his neck and airway, none of which revealed that he had suffered any injury. (*Id*.) Plaintiff was cleared from HMC and returned to KCCF where he was placed on suicide watch on the psychiatric floor for a period of eight days. (*Id*.)

Psychiatric staff attempted to meet with plaintiff on a daily basis during the time he was in psychiatric housing, but plaintiff refused to engage with staff for the first four days. (*See id*. at 3-4.) Beginning on June 29, 2015, plaintiff became more cooperative and therapeutically engaged with staff over the course of the next few days. (*Id*. at 4.) Plaintiff was allowed to return to his general population housing unit on July 2, 2015. (*Id*.) On July 21, 2015, plaintiff was seen by a psychiatric provider and began taking an antidepressant. (*Id*.) Shortly thereafter, on August 12, 2015, plaintiff asked to discontinue the medication because he said it made him irritable. (*Id*.)

Plaintiff's medical chart illustrates a pattern of threatening self-harm to jail and JHS staff, and to his defense attorney, for clear secondary gain by his own admission. (*Id*.) Dr. Stanfill details two examples of such conduct. First, on August 8, 2015, plaintiff was transferred to

REPORT AND RECOMMENDATION - 4

suicide watch when he became agitated about an issue with his diet and threatened to go on a hunger strike and commit suicide if his diet issue was not addressed. (Dkt. 57 at 4.) Plaintiff was angered by the transfer and he retaliated by flooding his cell. (*Id*.) He adamantly denied, however, any suicidal ideation and he openly discussed reporting suicidal ideation in order to meet his other perceived interests. (*Id*.)

The second example offered by Dr. Stanfill relates to a psychiatric progress note dated August 13, 2015 that detailed an incident in which plaintiff admitted he had tried to manipulate his defense attorney by threatening suicide by his next court date if certain issues in his case were not resolved. (*Id*.) Plaintiff admitted to psychiatric staff that he has a tendency to manipulate to get his way, or retaliate when he feels mistreated, by claiming he is suicidal. (*Id*.)

On August 28, 2015, without explanation, plaintiff began refusing all medical and psychiatric treatment and he consistently refused attempts at interaction and intervention by JHS staff despite their repeated attempts to meet with him. (*Id*. at 5.) He was transferred to suicide watch again on September 1, 2015, after he claimed to have swallowed four razor blades. (*Id*.) Plaintiff was transported to HMC for evaluation where no injury was found and radiology observed no foreign bodies. (*Id*.) Corrections staff checked plaintiff's razor and found it was intact. (*Id*.) When plaintiff was seen in the psychiatric unit following this incident, he was irritated and stated he was not suicidal and wanted to be left alone. (*Id*.)

Plaintiff's KCCF medical records indicate he was seen by JHS psychiatric staff approximately 20 times, and had multiple visits by medical and nursing staff, between his booking in May 2015 and his transfer to the Department of Corrections in October 2015. (*Id*.) Plaintiff's records further reveal that he refused several additional attempts by JHS medical and psychiatric staff to make contact with him. (*Id*.) Dr. Stanfill opines that plaintiff received

REPORT AND RECOMMENDATION - 5

regular and timely health services, that he was treated and evaluated appropriately by JHS psychiatric and medical staff, and that his treatment was consistent with community standard practice and JHS clinical practice guidelines.  (Dkt. 57 at 6.)

## DISCUSSION

Defendants argue that summary judgment is warranted in this case because plaintiff cannot show that defendants acted with deliberate indifference to plaintiff's serious medical need, nor can he show that a custom or policy exists that caused a violation of his constitutional rights. (Dkt. 56.)  Defendants argue as well that dismissal is appropriate because plaintiff has named entities that lack the capacity to be sued.  (*See id*.)  Plaintiff argues in response that his medical file makes clear that he was at high risk of suicide and that despite his many requests for mental health treatment, he didn't receive any treatment from defendants.  (Dkt. 59.)  Plaintiff did not attach to his response any of the medical records which he appears to claim would demonstrate defendants' deliberate indifference to his mental health needs.

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are facts which might affect the outcome of the pending action under governing law.  *See Anderson*, 477 U.S. at 248.  Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

REPORT AND RECOMMENDATION - 6

demonstrating a genuine issue of fact for trial and must produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations. *Id*. at 248.

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90 (1989). A local government unit or municipality can be sued as a "person" under § 1983. *Monell*, 436 U.S. at 691. However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury.

REPORT AND RECOMMENDATION - 7

*Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694).

In *Bryan County Commissioners*, the Supreme Court explained that

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County Commissioners*, 520 U.S. at 404.

### Medical/Mental Health Care Standard

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care.  When a claim of inadequate medical or mental health care is brought by a pretrial detainee, the claim arises under the Due Process Clause of the Fourteenth Amendment.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  The claim is nonetheless properly analyzed under Eighth Amendment standards.  *See id*.

In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component.  The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

REPORT AND RECOMMENDATION - 8

1    The objective component of an Eighth Amendment claim is "contextual and responsive
2  to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting
3  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The state of mind requirement under the subjective
4  component of the Eighth Amendment standard has been defined as "deliberate indifference" to
5  an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  Under the "deliberate indifference"
6  standard, a prison official cannot be found liable for denying an inmate humane conditions of
7  confinement unless the official knows of and disregards an excessive risk to inmate health or
8  safety.  *Id*. at 837.  "[T]he official must both be aware of facts from which the inference could be
9  drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

10   The Ninth Circuit has explained that "[p]rison officials are deliberately indifferent to a
11 prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical
12 treatment."  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks
13 omitted).  "[A] serious medical need is present whenever the failure to treat a prisoner's
14 condition could result in further significant injury or the unnecessary and wanton infliction of
15 pain."  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).  It is well established that a mere
16 difference of opinion concerning proper medical care is not sufficient to establish deliberate
17 indifference.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891
18 F.2d 240, 242 (9th Cir. 1989)).

Liability of Defendants

20   Plaintiff's complaint fails to make clear the precise defendants he intends to sue in this
21 action.  The complaint can reasonably be construed as asserting claims against only the King
22 County Jail as this is the only defendant identified in part III of plaintiff's complaint (Parties to
23 this Complaint), and the only defendant clearly referenced in part IV of the complaint (Statement

REPORT AND RECOMMENDATION - 9

of Claim). (*See* Dkt. 4 at 2-3.) However, the caption of plaintiff's complaint suggests that Public Health of Seattle & King County and, perhaps, King County itself are intended defendants as well. (*See id*. at 1.) Plaintiff, in his response to defendants' summary judgment motion, appears to more clearly indicate that King County, Public Health of Seattle & King County, and the King County Jail are all intended defendants in this action. (*See* Dkt. 59 at 1 and 7.)

Defendants correctly point out in their summary judgment motion that the King County Jail and Public Health of Seattle & King County are not proper defendants in this action because they lack the capacity to be sued. *See Nolan v. Snohomish County*, 59 Wn.App. 876, 883 (1990) ("in a legal action involving a county, the county itself is the only legal entity capable of suing and being sued"). Accordingly, plaintiff's complaint must necessarily be dismissed as to these two defendants.

With respect to King County itself, plaintiff fails to identify in either his complaint, or in his response to defendants' summary judgment motion, any policy or custom of King County that caused a constitutional deprivation. In addition, the Court cannot infer from the facts alleged by plaintiff, nor can it conclude from the scant evidence in the record, that King County, through its deliberate conduct, was the moving force behind the alleged deprivation of plaintiff's right to receive adequate mental health care. Accordingly, plaintiff's complaint must be dismissed as to defendant King County as well.

<u>Leave to Amend</u>

For the reasons explained above, plaintiff's complaint must necessarily be dismissed as to the three named defendants because plaintiff has not stated therein any claim upon which relief may be granted in this civil rights action. However, it appears from the record that plaintiff might conceivably be able to allege a viable claim for relief based on the denial of adequate

REPORT AND RECOMMENDATION - 10

mental health care if he were to identify the proper defendants.  Thus, in this Court's view, plaintiff should be given an opportunity to file an amended complaint which cures the obvious deficiencies in his original complaint.

Plaintiff is advised that proper defendants might include individuals who were involved in, or responsible for, providing him care at KCCF, rather than the entities which employ those individuals.  Plaintiff is further advised that if he is able to identify appropriate defendants, he will then have to allege specific facts demonstrating that each defendant personally participated in causing plaintiff harm of federal constitutional dimension.  The standards for adequately alleging a cause of action under § 1983, and for adequately alleging a claim of inadequate medical care, are set forth above.  The Court recommends that plaintiff use those standards as guideposts should he elect to file an amended complaint.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted as to the three named defendants because plaintiff has not stated any claim upon which relief may be granted against these defendants.  This Court further recommends that plaintiff be granted leave to file an amended complaint which states a viable claim for relief against viable defendants.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **August 15, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no

REPORT AND RECOMMENDATION - 11

timely objections are filed, the matter will be ready for consideration by the District Judge on **August 19, 2016.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 25th day of July, 2016.

/s/ James P. Donohue

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12